UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIP J. CHARVAT on behalf of himself and others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| THE ALLSTATE CORPORATION, and ESURANCE INSURANCE COMPANY | |
| Defendants. | |

Case No. 1:13-cv-7104

**CLASS ACTION COMPLAINT**

Plaintiff Philip J. Charvat (hereinafter referred to as "Plaintiff") individually and on behalf of all others similarly situated alleges on personal knowledge investigation of his counsel, and on information and belief as follows:

Preliminary Statement

1. Plaintiff brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 745 (2012).

2. Mr. Charvat received a prerecorded telemarketing call from the Defendant Allstate Corporation ("Allstate"), by its affiliate, Esurance Insurance Company ("ESurance") (collectively referred to as the "Defendants").

3. Because the calls were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*,

1

Mr. Charvat brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from these Defendants.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over the claims in this case under 28 U.S.C. § 1331 because this action arises out of a violation of federal law. *See* 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5. Venue is appropriate in this district pursuant to 18 U.S.C. 1391(b), as the Defendants are all residents of Illinois, and the Defendant Allstate is headquartered in this district in Northfield Township, IL and it has purposefully availed itself to the resources and protection of the State of Illinois.

## Parties

6. Plaintiff Philip J. Charvat is an individual citizen of the State of Ohio.

7. Plaintiff alleges that the Defendant The Allstate Corporation has a primary corporate address in Northfield Township, IL.

8. Plaintiff alleges that the Defendant Esurance Insurance Company has a primary corporate address in San Francisco, CA, and does business throughout the country, including this District.

## Legal Basis of the Claims

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

11. The TCPA prohibits persons from initiating any telephone call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the FCC. 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

12. Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Section 227(b), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

13. A seller is liable under Section 227(b) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

14. Additionally, a seller may be vicariously liable for a Section 227(b) violation under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

    a. Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to

detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information";

   b. Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems";

   c. Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark";

   d. Whether "the seller approved, wrote or reviewed the outside entity's telemarketing scripts"; and

   e. "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

*Id.* ¶ 46.

 15. The May 2013 FCC Ruling further held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

 16. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

*Id.* at ¶ 46.

17. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

Factual Allegations

28    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

29    The Defendants are, and at all times mentioned herein were, corporations and are each a "person" as defined by 47 U.S.C. § 153(39).

30    On or about August 6, 2013, plaintiff received a telephone call on his residential phone line.

31    The phone call began with silence and an electronic sound, and then after a pause a series of voice messages was played by the caller.

32    These voice messages had been recorded ahead of time by an actor or other individual.

33    The voice messages suggested that plaintiff could save money on his auto insurance, through obtaining quotes from Allstate, GEICO, Progressive and State Farm.

34    Plaintiff indicated that he was interested in a quote, and the call was transferred directly to a telephone line where Esurance accepts new customers.

35    After a prerecorded message that welcomed plaintiff to Esurance and noted that Esurance was backed by Allstate, plaintiff was placed on hold.

36 After a long hold, plaintiff was connected with a sales representative of Esurance.

37 The Esurance representative took plaintiff's information and entered it into Esurance's system, and obtained a quote for insurance.

38 The Esurance representative also suggested that plaintiff might want a home owner's insurance quote, too.

39 Esurance is owned by Allstate.

40 The message played was the result of a joint advertising campaign between Allstate and Esurance, designed to generate business for both Esurance and Allstate.

41 Esurance was authorized by Allstate to use Allstate's name in its prerecorded message mentioned above.

42 The artificial voice when Mr. Charvat responded to the call advised him that the sale was for Allstate insurance products. As such, Esurance is the apparent or actual agent of Allstate.

43 Allstate and Esurance know about telemarketing calls like the ones that are the subject of this case, but have taken nonexistent or insufficient steps to prevent such. Instead, they both willfully enjoy the benefits of such calls by issuing quotes for insurance, and accepting customers, directly arising out of such calls.

44 Both defendants regularly issue quotes for insurance during, or arising directly from, telemarketing calls like those that are alleged in this lawsuit.

45 Defendants retain and enjoy interim control over the telemarketing that is the subject of this lawsuit. For example, defendants have absolute control as to under what circumstances they issue quotes for insurance, and under what circumstances they issue insurance policies, and at any time could cease issuing quotes that were the result of this

telemarketing. Apparently, defendants made the business decision that the benefits of accepting business through these calls outweighed the risk of liability.

46 Upon information and belief:

    a. Allstate has the contractual right to control the marketing activities of its agents;

    b. Allstate's agents have the ability to enter information into Allstate's internal information systems; and

    c. Allstate has the right to use Allstate's trade name, trademark and service mark.

    d. Allstate agents employ "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with prospects such as plaintiff.

    e. Allstate has the right and the ability to "approve, write or review, the telemarketing scripts of its agents" as discussed in the May 2013 FCC Ruling.

## Class Action Allegations

47 As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48 The class of persons Plaintiff proposes to represent is tentatively defined, subject to modification after discovery and case development:

> All persons within the United States whom (a) Esurance or Allstate, directly or through their agents, played a pre-rrecorded message during a telephone call the purpose of which was to sell insurance (or develop "leads" for insurance sales) within four years before this Complaint was filed, and (b) and who did not previously give such number to Esurance or Allstate.

Collectively, all these persons will be referred to as "Class members."

7

42. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

43. Class members are identifiable through phone records and phone number databases.

44. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

45. Plaintiff is a member of the class.

46. The Plaintiff and the class have all been harmed by the actions of the Defendants.

47. This Class Action Complaint seeks injunctive relief and monetary damages.

48. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether the Defendants violated the TCPA by advertising via unsolicited prerecorded telemarketing calls;

    b. Whether the Defendants can meet their burden of proof with respect to statutory defenses for the telemarketing calls;

    c. Whether the Defendants conduct was knowing and/or willful;

    d. Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Defendants' actions;

    e. Whether Defendants should be enjoined from engaging in such conduct in the future.

49. Plaintiff is an adequate representative of the class because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and their agents.

51. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

53. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

54. The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

55. Plaintiff is unaware of litigation concerning this controversy already commenced by others who meet the proposed class definition.

## CAUSES OF ACTION

### FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

56. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

57. The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

58. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute.

59. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

### SECOND COUNT

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

60. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

61. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

62. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute.

63. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiffs and all Class members the following relief against the Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

C. As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the Class as part of a common fund or similar methodology, to be paid jointly and severally by the Defendants as a whole;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Alexander H. Burke
Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Phone: (312) 729-5288
aburke@burkelawllc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 314-7783 *facsimile*
ted@broderick-law.com
*Subject to Pro Hac Vice*

## JURY DEMAND

Plaintiff requests a trial by jury.

/s/ Alexander H. Burke
Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Phone: (312) 729-5288
aburke@burkelawllc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

>Edward A. Broderick
>Broderick Law, P.C.
>125 Summer St., Suite 1030
>Boston, MA  02110
>(617) 738-7080
>(617) 314-7783 *facsimile*
>ted@broderick-law.com
>*Subject to Pro Hac Vice*

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

>/s/Alexander H. Burke